UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY WEBB,<br><br>        Plaintiff,<br><br>        v.<br><br>COUNTY OF EL DORADO; PAMELA KNORR; VERNON PIERSON; JOSEPH HARN; and DOES 1 through 50 inclusive,<br><br>        Defendants. | No. 2:15-cv-01189-KJM-EFB<br><br><br><u>ORDER</u> |

I.    <u>INTRODUCTION</u>

        This matter is before the court on the defendants' motions to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 9, 10, & 12. The matter was submitted without a hearing. As explained below, the court GRANTS the defendants' motions, with leave to amend.

II.    <u>JUDICIAL NOTICE</u>

        As a preliminary matter, defendant Knorr requests judicial notice of the minutes of an August 26, 2014 meeting of the El Dorado County Board of Supervisors. Def.'s Req. Jud. Not., ECF No. 9-3. Defendant Knorr does not make clear the reason she requests judicial notice, other than to say that the Supervisors' meeting was referenced in plaintiff's complaint. *Id.* The

1

1 plaintiff does not oppose the request for judicial notice.  The minutes are relevant to the pending
2 motion, if they are subject to notice.

3       Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice
4 of an adjudicative fact, which "must be one not subject to reasonable dispute in that it is
5 either  (1) generally known . . . (2) or capable of accurate and ready determination by resort to
6 sources whose accuracy cannot reasonably be questioned."  In accordance with Rule 201, the
7 court may take judicial notice of matters of public record.  *Lee v. City of Los Angeles*, 250 F.3d
8 668, 689 (9th Cir. 2001) (citing *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282  (9th Cir.
9 1986)).  Granting a request for judicial notice does not mean, however, that the court assumes the
10 truth of the contents of the judicially noticed document.  *See Missud v. Nevada*, 861 F. Supp. 2d
11 1044, 1054 (N.D. Cal. 2012), *aff'd*, 520 F. App'x 534 (9th Cir. 2013).  Unless the proponent of
12 judicial notice carries its burden under Rule 201 to explain why a document's content is
13 indisputably accurate, the noticed paper simply "says what it says."  *Jacquett v. Sisto*,
14 No. 06-2938, 2008 WL 1339362, at *1 (E.D. Cal. Apr. 9, 2008).

15       The court agrees that is it not reasonably disputed that (1) a meeting took place on
16 August 26, 2014; and (2) that several members of the El Dorado County Board of Supervisors
17 attended the meeting.  Additionally, these minutes constitute a public record of the County.  In
18 accordance with Rule 201, the request is granted.

19 III.    BACKGROUND

20     A.    Allegations

21       Plaintiff Kelly Webb is a 52-year-old woman who worked and resided in
22 El Dorado County, California.  Compl. ¶ 1, ECF No. 1.  On February 15, 2011, Ms. Webb was
23 asked to oversee El Dorado County's ("County") Information Technology Department.  *Id*. ¶ 12.
24 A month later, Ms. Webb was formally appointed to the position of Acting Information
25 Technology ("IT") Director and received a substantial pay raise.  *Id*.  On July 23, 2013, after a
26 unanimous vote of the Board of Supervisors, Ms. Webb was appointed to the position of
27 permanent IT Director.  *Id*. ¶ 14.  Two weeks later, for no apparent reason, the County Board
28 reversed its decision and designated Ms. Webb as "interim" Director.  *Id.*

1        In September 2013, Pamela Knorr was appointed as the County's new director of
2  human resources. *Id.* ¶ 15. In this position, Ms. Knorr served as Ms. Webb's direct supervisor.
3  *Id.* ¶ 3. Two months later, Vernon Pierson, the County's District Attorney and Chief Technology
4  Officer ("CTO"), asked Ms. Webb about her retirement plans. *Id.* ¶ 16. When Ms. Webb
5  responded that she was 51 years old, Mr. Pierson stated, "I thought you were older." *Id.* In
6  response, Ms. Webb informed Mr. Pierson that she had no intention of retiring. *Id.*

7        In the months following the conversation between Ms. Webb and Mr. Pierson,
8  between January and February 2014, Ms. Knorr engaged in multiple discussions with Mr. Pierson
9  about changing the management structure of the County's IT Department. *Id.* ¶ 17. It was during
10 this time that Mr. Pierson began to circumvent Ms. Webb, going around her to discuss questions
11 and issues with David Russell, a much younger man in the IT department. *Id.*

12       On February 7, 2014, Mr. Pierson again asked Ms. Webb about her retirement
13 plans. *Id.* ¶ 18. In response Ms. Webb repeated she had no plans to retire. *Id.* During this
14 discussion, Mr. Pierson informed Ms. Webb of "political issues brewing" within the County,
15 some of which rendered Ms. Webb's employment unsafe. *Id.* ¶ 18. With this, Mr. Pierson said
16 Ms. Webb needed to move to another position. *Id.* Mr. Pierson offered to find a lateral county
17 position for Ms. Webb, all while assuring her she would not lose any compensation. *Id.*

18       That same day, Ms. Webb met with County Chief Administrative Officer ("CAO")
19 Terry Daly to "report the distressing and threatening comments" Mr. Pierson had made to her.
20 *Id.* ¶ 19. Ms. Webb then spoke to Ms. Knorr because she believed Mr. Pierson's statements
21 regarding her continued employment and retirement were "discriminatory [] and motivated by
22 [Ms. Webb's] age and gender." *Id.* ¶ 20. Ms. Knorr "brushed aside [Mr. Pierson's actions]," and
23 said that Ms. Webb was "'over-reacting' and being 'overly sensitive.'" *Id.* ¶ 20. The next week,
24 after a talk with Ms. Daly, Mr. Pierson apologized to Ms. Webb for his comments. *Id.* ¶ 21.
25 Nonetheless, Mr. Pierson continued to pressure Ms. Webb to leave the IT department. *Id.*

26       In March 2014, the County implemented a "Respectful Workplace Policy"
27 designed to address an employment culture in which acts of blatant favoritism, ageism, sexism,
28 harassment, and retaliation had occurred. *Id.* ¶ 23. On May 13, 2014, after continued pressure

3

1    from Mr. Pierson, Ms. Webb spoke out at a Board of Supervisors meeting on respectful
2    workplace issues and the County's cultural assessment.  *Id.*  Specifically, Ms. Webb spoke
3    publicly about the terms and conditions of her employment and what she viewed as an unfair
4    attack on her position.  *Id*.

5    During the same month, Ms. Webb was informed that Ms. Knorr was running a
6    recruitment process for the IT Director position.  *Id.*  To obtain the position, Ms. Webb would
7    have to apply and compete against other candidates.  *Id.*  She inquired about the recruitment
8    process with Mr. Pierson, who told Ms. Webb that she did not "have what it takes to take the
9    team to the Super Bowl."  *Id.*

10   Between June 16 and July 31, 2014, Ms. Knorr directed Ms. Webb to meet with
11   her and Mary Egan from the County's Cultural Assessment vendor.  *Id.* ¶ 25.  The focus of the
12   meeting was to determine whether Ms. Webb was qualified to compete for the IT Director
13   position.  *Id.*  Immediately after the meeting with Ms. Webb, Ms. Knorr and Ms. Egan met with
14   Mr. Russell, who was promoted to Assistant IT Director in August 2014, to set up staff sessions
15   and to ask the IT staff what qualities they felt a "New IT Director" should have.  *Id.* ¶ 26.
16   Interviews with the entire staff were slated to occur from July 10 to 11, 2014.  *Id.* ¶ 27.  On the
17   day before the staff interviews occurred, Ms. Webb sent two emails to her superiors expressing
18   her deep concern with the recruitment process. *Id.* ¶ 28.

19   On July 14, 2014, Ms. Knorr met with the Board of Supervisors in a closed session
20   titled "Public Employee Appointment—IT Director."  *Id.* ¶ 29.  A week later, the IT Director
21   position was open for applications.  *Id.* ¶ 31.  During that same month, Ms. Knorr rewrote a
22   portion of the prerequisites for the position of IT Director, in which she removed language
23   allowing applicants to receive credit for professional experience in lieu of a college degree.  *Id.*
24   ¶ 34.  Ms. Webb does not have a college degree.  *Id.*

25   On July 24, Ms. Webb submitted a Respectful Workplace complaint to Shaw
26   Valenza, LLP, an outside law firm, claiming violations of the County workplace policy, in
27   addition to civil rights violations based on age and gender.  *Id*. ¶ 34.  On August 26, CAO Daly
28   informed Ms. Webb that she had been demoted from IT Director to Principal Administrative

Analyst, effective the next day. *Id*. ¶ 36. A requirement to start the new position on the next day was not normal, for demoted employees would typically be allowed a transition period. *Id.* ¶ 36. During the same month, the County gave David Russell, the former Assistant IT Director who was promoted to Assistant IT Director in August 2014, all of Ms. Webb's prior job responsibilities, as well as a sizable pay raise. *Id.* ¶ 39. Mr. Russell was a man, under 40 years old, and had no college degree. *Id.* ¶ 39. From roughly August 17, 2014 on, the County has employed David Russell as the IT Director in place of Ms. Webb. *Id.*

It is on the basis of these allegations that Ms. Webb brings claims against the County, Ms. Knorr, and Mr. Pierson.

   B.  Procedural Background

Ms. Webb filed her complaint in this court on June 2, 2015. ECF No. 1. She brings a First Amendment claim against the County based on 42 U.S.C. § 1983 for alleged retaliation in light of her comments made at the County Board meeting on May 13, 2014. *Id.* ¶¶ 45–50. Ms. Webb also brings a claim against the County, Ms. Knorr, and Mr. Pierson based on 42 U.S.C. § 1985, for an alleged conspiracy to violate her rights based on age and gender. *Id.* ¶¶ 51–56. Lastly, Ms. Webb brings a claim against all defendants, based on 42 U.S.C. § 1986, for allegedly neglecting to prevent the violation of her civil rights based on age and gender. *Id.* ¶¶ 57–61.

Each defendant filed a motion to dismiss Ms. Webb's claims. ECF Nos. 9, 10 & 12. Specifically, the County argues Ms. Webb has not adequately alleged a "policy or custom," a showing needed to establish municipal liability under § 1983. The County, Ms. Knorr and Mr. Pierson argue that Ms. Webb has not pleaded adequate facts to support the § 1985 conspiracy claim. Alternatively, they argue Ms. Webb's § 1985 claim is barred by the intra-corporate conspiracy doctrine. Finally, all defendants argue that Ms. Webb has not made an adequate showing for her § 1986 claim because her § 1985 claim is unsupported.

IV.  LEGAL STANDARD—Motion to Dismiss under Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The court

1  may dismiss the complaint "based on the lack of cognizable legal theory or the absence of
2  sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*,
3  901 F.2d 696, 699 (9th Cir. 1990).
4        In reviewing a Rule 12(b)(6) motion, a court must construe the complaint in the
5  light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true.
6  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000) (citing *Cahill v. Liberty Mutual Ins.*
7  *Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996)).  Accordingly, when a complaint's allegations are
8  subject to more than one inference, or more than one plausible explanation, the court must adopt
9  whichever inference or explanation supports the plaintiff's complaint.  *See Starr v. Baca*,
10 652 F.3d 1202, 1216 (9th Cir. 2011).  To obtain this deference, the plaintiff's explanations or
11 allegations must first be "plausible." *Id.*
12       The court is not required to assume the truth of legal conclusions "cast in the form
13 of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).  Thus, to survive a
14 motion to dismiss, the plaintiff's complaint must include something more than "an unadorned,
15 the-defendant-unlawfully-harmed-me accusation," or "'labels and conclusions,' or 'a formulaic
16 recitation of the elements of a cause of action.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic*
17 *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Additionally, the complaint must be more than
18 "merely consistent with" a "defendant's liability," lest it stop "short of the line between
19 possibility and plausibility of entitlement to relief."  *Id.*  (internal quotations omitted).
20 Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a
21 "context-specific task that requires the reviewing court to draw on its judicial experience and
22 common sense."  *Ashcroft*, 556 U.S. at 679.
23 V.    <u>DISCUSSION</u>
24     A.    <u>Section 1983—First Amendment Retaliation</u>
25       The court begins its analysis by addressing Ms. Webb's § 1983 claim against the
26 County of El Dorado for alleged retaliation in violation of her First Amendment right to freedom
27 of speech.  Specifically, Ms. Webb alleges that the County of El Dorado violated her right to be
28 "free from retaliation for engaging in free speech and/or petitioning the government for redress of

grievances." Compl. ¶ 46. This claim is tied to the May 13, 2014 Board of Supervisors meeting, at which Ms. Webb spoke publicly about the "terms and conditions of her employment and what she viewed as an unfair attack on her position." *Id.* ¶ 23. The County argues that Ms. Webb's First Amendment claim does not meet the requirements for a § 1983 claim, because her allegations do not adequately plead municipal liability.

The First Amendment shields a public employee who speaks as a citizen on a matter of public concern. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013). Speech involves a matter of public concern when it fairly can be said to relate to any matter of "political, social, or other concern to the community." *Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 748 (9th Cir. 2010). Under the First Amendment, it is impermissible for an employer to retaliate against an employee for protected speech. *Id.* A First Amendment retaliation claim can be brought under § 1983. *See Hollister v. Tuttle*, 210 F.3d 1033, 1034–35 (9th Cir. 2000) (holding that alleged discrimination against tenured professor claiming retaliation in response to his protected speech would "constitute denials of governmental benefits redressable by § 1983").

Section 1983 imposes liability on "persons" who, under color of law, deprive others of a constitutional right. 42 U.S.C. § 1983. The Supreme Court has construed the term "persons" to include municipalities, such as the County. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). A municipality is responsible for a constitutional violation only when an "action [taken] pursuant to [an] official municipal policy of some nature" caused the violation. *Id.* at 691. This means that a municipality is not liable under § 1983 based on the common-law tort theory of respondeat superior. *Id.* The official municipal policy on which a § 1983 claim relies may be either formal or informal. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (plurality opinion) (acknowledging that a plaintiff could establish liability by showing "formal policies, or . . . informal practices 'so permanent and well settled as to constitute a custom or usage with the force of law'").

A formal policy exists when an official or officials responsible for establishing final policy make "a deliberate choice to follow a course of action . . . with respect to the subject

1  matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986) (plurality opinion).
2  An informal policy, on the other hand, exists when a plaintiff can prove the existence of a
3  widespread practice that, although not authorized by an ordinance or an express municipal policy,
4  is "so permanent and well settled as to constitute a custom or usage with the force of law."
5  *Praprotnik,* 485 U.S. at 127 (internal quotation marks omitted).  To prove the existence of a
6  widespread practice, the plaintiff must show more than a single constitutional deprivation,
7  random act, or isolated event.  *Christie v. Iopa,* 176 F.3d 1231, 1235 (9th Cir. 1999).  Instead, a
8  plaintiff must show a pattern of similar incidents in order for the factfinder to conclude that the
9  alleged informal policy was "so permanent and well settled" as to carry the force of law.
10 *Castro v. Cnty. of Los Angeles*, 797 F.3d 654, 671 (9th Cir. 2015) (citing *Praprotnik,* 485 U.S. at
11 127).

12    To the extent Ms. Webb alleges that her First Amendment right was violated, she
13 does not establish that the violation is attributed to a municipal policy.  For example, she alleges
14 that on March 2014, the County implemented a "Respectful Workplace Policy," designed to
15 address an employment culture within the County's workforce where acts of blatant favoritism,
16 ageism, sexism, harassment and retaliation occurred.  Compl. ¶ 22.  Ms. Webb does not plead
17 details to demonstrate how this, or any other formal policy, violated her right to free speech.  The
18 allegations that Ms. Webb presents are insufficient to make out a claim under § 1983 on the basis
19 of a formal policy.

20    In arguing that an informal policy exists, Ms. Webb describes the various "internal
21 and external" steps she took in attempting to remedy the harm resulting from the County's alleged
22 retaliation.  Specifically, Ms. Webb made internal complaints to Daly, Knorr, and Pierson; sent
23 two e-mails to her superiors expressing her deep concern with the so-called 'recruitment' process;
24 spoke publicly to the El Dorado County Board; and submitted a Respectful Workplace complaint
25 to an outside law firm.  Compl. ¶¶ 28–32.  But in the informal policy context, an analysis
26 regarding municipal liability focuses not only on actions the plaintiff took to remediate a
27 constitutional violation, it also focuses on the actions the County took upon receiving notice of an
28 alleged constitutional violation.  *See Henry v. Cnty. of Shasta*, 132 F.3d 512 (9th Cir. 1997)

1  (holding that evidence of "identical incident[s]" to an incident alleged by the plaintiff may
2  establish that a municipality was on notice of its agents' unconstitutional actions).  Ms. Webb has
3  provided no allegations of the County's reaction to her various internal and external actions, or
4  pled that the County received notice of, and did nothing to remedy, the constitutional violations.
5  These allegations are insufficient to support an inference of a policy through custom or practice.

6  Other allegations undermine Ms. Webb's claim for municipal liability.  Ms. Webb
7  alleges it was "not the normal County process" for a person to immediately return to a position as
8  the Principal Administrative Analyst after demotion from the position of IT Director.  Compl.
9  ¶ 36.  By this allegation, she suggests it was against policy to deny an employee a transition
10 period after a demotion.  *Id.*  At best, Ms. Webb alleges that a policy violation occurred.  One
11 policy violation is insufficient to plausibly allege municipal liability.  Her conclusory allegation
12 that the County's actions constitute a "custom, pattern, and practice within the County
13 supervisory hierarchy of violations of the Civil Rights Laws of the United States" is not entitled
14 to the presumption of truth.  *See, e.g.*, *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  In
15 sum, Ms. Webb advances little more than an "unadorned, the-defendant-unlawfully-harmed-me
16 accusation," an insufficient allegation to support liability.  Her allegations, even when taken as
17 true, are insufficient to establish liability under § 1983 on the basis of an informal policy.

18 Defendant County's motion to dismiss is granted in this instance.

19  B.  Section 1985—Conspiracy to Violate Civil Rights

20  Section 1985 of Title 42, the Ku Klux Klan Act of 1871, was enacted by the
21 Reconstruction Congress to protect individuals, primarily African Americans, from conspiracies
22 to deprive them of their civil rights.  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir.
23 /////
24 /////
25 /////
26 /////
27 /////
28

9

1992).  To successfully bring a claim under § 1985 today, a plaintiff must allege and prove four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828–29 (1983); *Sever*, 978 F.2d at 1536.

In addition to satisfying the four elements above, the plaintiff must also demonstrate that the violation of her civil rights was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Sever*, 978 F.2d at 1536 (quoting *Griffith v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Thus, relief under § 1985 is limited to those civil rights deprivations where discriminatory animus can be shown. *See id.*

For purposes of her § 1985 claim, Ms. Webb states she is a member of protected categories based upon "her gender (female) and age."  Compl. ¶ 1.  On this basis, she alleges that defendants, "while acting in concert an[d] in furtherance of a preconceived plan, wrongfully and intentionally discriminated against . . . Plaintiff because of her protected categories." *Id.* ¶ 53.  In response, defendants argue that Ms. Webb does not allege adequate facts establishing a conspiracy.  Alternatively, defendants argue that the § 1985 claim is barred by the intra-corporate conspiracy doctrine.  While Ms. Knorr argues Ms. Webb does not allege facts in support of her § 1985 First Amendment claim, *see* ECF No. 9-1 at 7, Ms. Webb's claim here relies only on allegations regarding her gender and age.  Thus, the court addresses only these issues below.

    1. <u>Scope of § 1985</u>

In the years after *Griffith*, *supra*, courts have struggled to determine whether § 1985 applied to contexts other than race. *See Sever*, 978 F.2d at 1536.  The Ninth Circuit articulated a general rule that § 1985 is extended beyond race "only when the class in question can show that there has been a governmental determination that its members 'require and warrant

1  special federal assistance in protecting their civil rights.'" *Schultz v. Sundberg*, 759 F.2d 714, 718
2  (9th Cir. 1985) (quoting *DeSantis v. Pac. Tel. & Tel. Co.*, 608 F.2d 327, 333 (9th Cir.1979)); *see*
3  *also Sever*, 978 F.2d at 1538 (same). Specifically, the Ninth Circuit requires "either that the
4  courts have designated the class in question a suspect or quasi-suspect classification requiring
5  more exacting scrutiny or that Congress has indicated through legislation that the class required
6  special protection." *Schultz*, 759 F.2d at 718. This rule serves to ensure that § 1985 not be used as
7  a "general federal tort law." *Gerritsen v. De la Madrid Hurtado*, 819 F.2d 1511, 1518–19 (9th
8  Cir. 1987).

9        Applying these standards, the Ninth Circuit has held, for example, that women
10  purchasers of disability insurance who alleged that insurance was sold to them at discriminatory
11  rates were a class within the meaning of § 1985. *Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d
12  499, 505 & n.16 (9th Cir. 1979). In this context, the court found it was "well established that
13  gender-based classifications may result in invidious discrimination." *Id.* However, neither the
14  Supreme Court nor the Ninth Circuit has held that special federal assistance is warranted for a
15  class based on age. *See, e.g., United States v. Flores-Villar*, 536 F.3d 990, 998 (9th Cir. 2008),
16  *aff'd*, __ U.S. __, 131 S. Ct. 2312 (2011). Rather, classes based on age are not considered suspect
17  for purposes of § 1985. *Id.* (rational basis review applies to claim of age-based discrimination
18  because age is not a suspect class). The court thus dismisses Ms. Webb's § 1985 claim to the
19  extent it alleges age discrimination. In order to succeed on her claim under § 1985, Ms. Webb
20  will have to show that defendants conspired and that this conspiracy was based upon an invidious
21  discriminatory animus towards Ms. Webb because of her gender.

22        2.    <u>Conspiracy Element of § 1985</u>

23        To successfully plead a § 1985 violation, a plaintiff must provide allegations of a
24  "conspiracy to deprive the plaintiff of the equal protection of the laws." *Scott v. Ross*, 140 F.3d
25  1275, 1284 (9th Cir. 1998). While a conspiracy can be inferred from conduct and need not be
26  proven ultimately by evidence of an express agreement, "the rules that govern motions to dismiss
27  mandate that the plaintiff allege facts from which the court can draw a reasonable inference that
28  the defendant is liable for the conduct alleged." *See id.*; *Ashcroft*, 556 U.S. at 678. In the absence

of an express agreement, the plaintiff must do more than plead independent parallel behavior on the part of the defendants. *See Twombly*, 550 U.S. at 554. The Ninth Circuit has held that "[a] claim under § 1985 must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).

Ms. Webb alleges several facts in support of her claim of a conspiracy involving Ms. Knorr, Mr. Pierson, and the County. For example, Ms. Webb alleges that shortly after Ms. Knorr started working in the El Dorado office, Mr. Pierson and Ms. Knorr had multiple discussions between January and February 2014 about changing the County IT Department's management structure without seeking any involvement from Ms. Webb, the interim Director of that department. Shortly after these discussions, Mr. Pierson asked Ms. Webb about her plans to retire. Also shortly after the discussions, Mr. Pierson began bypassing Ms. Webb to discuss IT issues with David Russell, a younger male IT employee without a college degree. At the time Mr. Russell was the Assistant IT Director; as noted above he later became the IT Director. With regard to Ms. Knorr, Ms. Webb alleges that Ms. Knorr took part in at least two closed meetings with the Board of Supervisors about the IT Director position.

These allegations fall short of establishing at this stage any agreement or plan to deprive Ms. Webb of her rights based on her gender. To the extent the defendants planned or agreed to do anything during the meetings alleged, it was to change the County IT Department's management structure, as well as to speak generally about Ms. Webb's position as IT Director. No connection is pled between the various meetings and the promotion of Mr. Russell. Without more, Ms. Webb does not plausibly allege the existence of a conspiracy. Her § 1985 claim is dismissed and the defendants' motions are granted.

Because plaintiff provides insufficient factual allegations in support of her § 1985 conspiracy claim, the court need not determine whether the intra-corporate conspiracy doctrine bars Ms. Webb's § 1985 claim.

/////

/////

      C.      <u>Section 1986—Neglect to Prevent Violation of Civil Rights Laws</u>

Section 1986 imposes liability on every person who knows of an impending violation of § 1985 but neglects or refuses to prevent the violation. *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985). A complaint can state a claim under § 1986 only if it contains a valid claim under § 1985. *Id.* Because the complaint fails to state a claim under § 1985, Ms. Webb's concurrent claim under § 1986 cannot proceed. The court dismisses Ms. Webb's § 1986 claim and grants defendants' motions.

      D.      <u>Leave To Amend</u>

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend is to be granted freely. Fed. R. Civ. Proc. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

Here it is not clear that the claims cannot be cured. Plaintiff's §§ 1983, 1985 and 1986 claims are dismissed with leave to amend, consistent with this order. Plaintiff's amended complaint shall be filed within twenty-one days.

IT IS SO ORDERED.

DATED: December 28, 2015.

_____
UNITED STATES DISTRICT JUDGE